| | |
|---|---|
| MICHAEL J. REDENBURG, ESQ. PC<br>Michael Redenburg, Esq. (NY #MR4662)<br>11 Park Place, Suite 817<br>New York, NY 10007<br>Telephone: (212) 240-9465<br>Facsimile: (917) 591-1667 | |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **EDDIE RIVERA,**<br><br>                             **Plaintiff,**<br>v.<br><br>**City of New York, NYPD Detective Brian Egan (Tax ID#925234), NYPD Detective Mark Tufano (Tax ID#919796), NYPD Officer Doreyda Munoz (Tax ID#952039), NYPD Sergeant Angel Delgado (Tax ID#930022) and NYPD Officer Dawil Valdez (Tax ID#949755).**<br>                             **Defendants.** | **Amended Complaint**<br><br>JURY TRIAL DEMANDED<br><br>Civ. No.: 15- 7378 (GBD) |

### PRELIMINARY STATEMENT

1. Plaintiff brings this civil rights action against the City of New York, NYPD Detective Brian Egan, NYPD Detective Mark Tufano, NYPD Officer Doreyda Munoz, NYPD Sergeant Angel Delgado and NYPD Officer Dawil Valdez alleging that defendants violated his rights under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution by falsely arresting him on three separate occasions and maliciously prosecuting him on two separate occasions. Plaintiff seeks compensatory and punitive damages, attorney's fees and costs and such other and further relief as the Court deems just and proper.

### JURISDICTION AND VENUE

1

2. This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth & Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331 and §1343.

3. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391 (b) and because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and because some or all of the defendants reside in this District.

## DEMAND FOR A JURY TRIAL

4. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury in this action.

## PARTIES

5. Plaintiff Eddie Rivera ("Plaintiff" or "Mr. Rivera") is a fifty five (55) year old man who resides in the County of New York, City and State of New York.

6. The City of New York is a municipal corporation organized under the laws of the State of New York.

7. The individual defendants are members of the New York City Police Department ("NYPD") who were so employed on April 30, 2013, November 12, 2013 and July 1, 2015. Defendants Detective Brian Egan, NYPD Detective Mark Tufano, NYPD Officer Doreyda Munoz, NYPD Sergeant Angel Delgado and NYPD Officer Dawil Valdez were acting under color of state law and in their capacities as members of the NYPD at all relevant times.  Detective Brian Egan, NYPD Detective Mark Tufano, NYPD Officer Doreyda Munoz, NYPD Sergeant Angel Delgado and NYPD Officer Dawil Valdez are sued in their individual and official capacities.

## STATEMENT OF FACTS

### *The First Incident*

8. On April 30, 2013, Plaintiff was driving his automobile in Manhattan, NY and dropping off an individual who had been working with him, doing construction work.

9. Plaintiff noticed a police vehicle signaling for him to pull over to the side of the road and Plaintiff complied.

10. NYPD Detectives Brian Egan and Mark Tufano approached Plaintiff's automobile and instructed Plaintiff to step out of the automobile, which Plaintiff did.

11. Thereafter, NYPD Detectives Brian Egan and Mark Tufano impermissibly searched Plaintiff's automobile, including Plaintiff's bags containing his construction tools.

12. Inside of Plaintiff's bag of construction tools, NYPD Detectives Brian Egan and Mark Tufano found a sheetrock knife and arrested Plaintiff.

13. Plaintiff was taken to the precinct for processing, where he spent approximately two and one half (2 1/2) hours before being released with a Desk Appearance Ticket.

14. Once before a judge at his Criminal Court arraignment, Plaintiff learned that he had been charged with violating NY PL§265.02, Criminal Possession of a Weapon, a Class D Felony Offense.

15.  As a result of the criminal charge, Plaintiff was required to attend court more than seven (7) times over the course of thirteen (13) months.

16. On May 12, 2014, the criminal charge lodged against Plaintiff was dismissed in the entirety.

17. As a result of the foregoing, Plaintiff suffered an unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation and degradation – all to his detriment.

*<u>The Second Incident</u>*

18. On November 12, 2013, Plaintiff was driving his automobile in the vicinity of Park Avenue and 141st Street, Bronx, New York, when a police vehicle signaled for him to pull over to the side of the road and Plaintiff complied.

19. Officers approached Plaintiff's automobile and ordered him out of the car; Plaintiff complied.

20. Thereafter, NYPD Officer Doreyda Munoz and Sergeant Angel Delgado impermissibly searched Plaintiff's automobile, and found a rubber billy club underneath the driver's seat of Plaintiff's automobile.

21. NYPD Officer Doreyda Munoz and Sergeant Angel Delgado also impermissibly searched Plaintiff's bags containing his construction tools, said search revealing a sheetrock knife in his bag of tools.

22. Plaintiff was arrested and taken to the precinct for processing, where he spent about ten (10) hours.

23. Subsequently, Plaintiff was transported to Bronx Central Booking to await arraignment, where he spent approximately nine and one-half (9 1/2) hours.

24. At arraignment, Plaintiff learned that he had been charged with Unlawful Possession of Marijuana and Criminal Possession of a Weapon in the Fourth Degree.

25. As a result of the criminal charges lodged against Plaintiff, he was required to attend court more than ten (10) times over a period of twenty two (22) months.

26. On September 8, 2015, the criminal charges lodged against Plaintiff were dismissed in the entirety.

27. As a result of the foregoing, Plaintiff suffered an unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation and degradation – all to his detriment.

*The Third Incident*

28. On July 1, 2015, Plaintiff was leaving his mother's apartment in New York, NY.

29. Plaintiff was walking and ran into two individuals he knew from the neighborhood, Uriel and Danny, and so they started talking.

30. All of a sudden, NYPD Officer Dawil Valdez approached and demanded that Plaintiff "get against the van," advising Plaintiff that he was under arrest for gambling.

31. Plaintiff was taken to the precinct for processing where he spent about four (4) hours.

32. He was thereafter given a Desk Appearance Ticket charging him with Promoting Gambling in the Second Degree.

33. When Plaintiff went to court on the return date for the Desk Appearance Ticket, he was advised that the New York County District Attorney's Office had declined to prosecute him on the mendacious criminal charge levied against him.

34. As a result of the foregoing, Plaintiff suffered an unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation and degradation – all to his detriment.

### FIRST CLAIM
*Unlawful Search and Seizure*

35. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

36. Defendants City of New York, NYPD Detectives Brian Egan and Mark Tufano violated the Fourth and Fourteenth Amendments related to Plaintiff's arrest on April 30, 2013, because they stopped and searched Plaintiff without reasonable suspicion or probable cause to do so.

37. Defendants City of New York, NYPD Officer Doreyda Munoz and Sergeant Angel Delgado violated the Fourth and Fourteenth Amendments related to Plaintiff's arrest on November 12, 2013, because they stopped and searched Plaintiff without reasonable suspicion or probable cause to do so.

38. Defendants City of New York and NYPD Officer Dawil Valdez violated the Fourth and Fourteenth Amendments related to Plaintiff's arrest on July 1, 2015, because he stopped and searched Plaintiff without reasonable suspicion or probable cause to do so.

39. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein before alleged.

40. As a result of the foregoing, Plaintiff suffered unlawful detentions, loss of liberty, emotional distress, fear, anxiety, humiliation and degradation – all to his detriment.

## SECOND CLAIM
*False Arrest*

41. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

42. Defendants City of New York, NYPD Detectives Brian Egan and Mark Tufano violated the Fourth and Fourteenth Amendments related to Plaintiff's arrest on April 30, 2013, because they arrested Plaintiff without probable cause.

43. Defendants City of New York, NYPD Officer Doreyda Munoz and Sergeant Angel Delgado violated the Fourth and Fourteenth Amendments related to Plaintiff's arrest on November 12, 2013, because they arrested Plaintiff without probable cause.

44. Defendants City of New York and NYPD Officer Dawil Valdez violated the Fourth and Fourteenth Amendments related to Plaintiff's arrest on July 1, 2015, because they arrested Plaintiff without probable cause.

45. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CLAIM
*MALICIOUS PROSECUTION UNDER §1983*

46. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

47. Defendant NYPD Detective Brian Egan maliciously misrepresented to the Manhattan District Attorney's Office that Plaintiff had violated the law on April 30, 2013.

48. Defendant NYPD Officer Doreyda Munoz maliciously misrepresented to the Manhattan District Attorney's Office that Plaintiff had violated the law on November 12, 2013.

49. The criminal actions commenced against Plaintiff resulting from his April 30, 2013 and November 12, 2013 arrests were initiated and continued for periods of 13 months and 22 months, respectively.

50. Defendants NYPD Detective Brian Egan and NYPD Officer Doreyda Munoz lacked probable cause for the commencement of the criminal proceedings against Plaintiff.

51. In this regard, Defendants NYPD Detective Brian Egan and NYPD Officer Doreyda Munoz were not motivated to serve justice, but rather, they were motivated to earn overtime compensation, enhance their arrest records and charge Plaintiff with violating the law, when in fact, he had not.

52. The criminal cases filed against Plaintiff resulting from his April 30, 2013 and November 12, 2013 arrests were ultimately completely dismissed.

53. Accordingly, Defendants NYPD Detective Brian Egan and NYPD Officer Doreyda Munoz are liable to Plaintiff for malicious prosecution.

## **FOURTH CLAIM**
*MONELL CLAIM*

54. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

55. The City of New York is a "person" within the meaning of 42 U.S.C. §1983.

56. The acts complained of were carried out by the aforementioned defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and NYPD, all under the supervision of ranking officers of the NYPD.

57. The City is liable for the damages suffered by Plaintiff as a result of the conduct of their employees, agents, servants, in that, after learning of their employees' violation of Plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy and/or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

58. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of Plaintiff's constitutional rights in this case.

59. The Incident that Plaintiff complains of is not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of the City's police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with

8

no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obvious illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

60. In addition, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

61. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following-up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

62. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions.

63. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate Plaintiff's civil rights without fear of reprisal.

64. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

65. As a result of the foregoing, Plaintiff suffered an unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation and degradation – all to his detriment.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

    a. Compensatory damages against all defendants, jointly and severally;

    b. Punitive damages in an amount to be determined by a jury;

    c. Reasonable attorneys' fees and costs; and

    d. Such other relief as this Court shall deem just and proper.

Dated: March 21, 2016

New York, NY

          **s/Michael J. Redenburg\_\_\_\_\_**
          Michael J. Redenburg (NY #MR4662)
          MICHAEL J. REDENBURG, ESQ. PC
          11 Park Place, Suite 817
          New York, NY 10007
          mredenburg@mjrlaw-ny.com
          1-212-240-9465 (Phone)
          1-917-591-1667 (Fax)